The Alliance Insurance Co. of Philadelphia agt. Cleveland.

## SUPREME COURT.

The ALLIANCE INSURANCE COMPANY OF PHILADELPHIA agt. ASA B. CLEVELAND.

Where an *agent* is liable to his principal, in a fiduciary capacity, for moneys of the principal received by him, and the principal settles with him by taking his check and acceptance, payable in future, the principal's *claim* which was in its nature for a wrong, is by such arrangement changed into a *debt*.

And this is so, although the principal shows that the check and acceptance were not received in *satisfaction* of the agent's indebtedness, and that he did not take these securities with a view to change the character of the claim, or the defendant's responsibility.

*Albany Special Term, Aug.,* 1856.

MOTION to vacate order of arrest.

The plaintiffs are a foreign corporation, organized under the laws of Pennsylvania, and engaged in the business of insurance. The defendant was their agent for effecting insurance in Troy. This action was brought to recover a balance alleged to be due from the defendant for moneys received by him as agent, and

not paid over to the plaintiffs. Upon the commencement of the suit, an order of arrest was made by a county judge, upon which this defendant was held to bail. The defendant moved to vacate this order, upon his own affidavit and that of William D. Cleveland, stating, in substance, that on the 8th day of February, 1856, an arrangement was made between the defendant and the plaintiffs, by which the defendant was to give the plaintiffs his check, dated on the 1st day of March thereafter, for a part of the amount due the plaintiffs, and to accept their draft payable in four months, for the balance so due, and execute his bond with security for the punctual payment of such moneys as might thereafter be received by him as agent; and that the check, draft and bond were made and executed, and were received by the plaintiffs in settlement of all existing claims against the defendant.

On the part of the plaintiffs, the affidavit of their general agent was produced, in which he states that, in making the settlement with the defendant, the securities mentioned by him were received upon the assurance that the draft and check would be paid at maturity, and these, when paid, and not till then, were to be a satisfaction of the defendant's indebtedness.

W. A. BEACH, *for plaintiffs.*
A. A. LEE, *for defendant.*

HARRIS, Justice. There can be no doubt, I think, that prior to the transaction of the 8th of February, the defendant was liable to arrest. As the plaintiffs' agent, he had received *their* money—not his own. He had received it upon the special trust that he should pay it over to the plaintiffs—not apply it to his own use. His default brought him within the provisions of the 2d subdivision of the 179th section of the Code.

But when, upon the settlement between the parties, the plaintiffs received the check and acceptance of the defendant, payable *in futuro,* for the amount due them, the character of his liability was changed. He then became their debtor, not for moneys received by him in a fiduciary capacity, but as the

drawer of a check and the acceptor of a draft. Until these securities should be dishonored, the plaintiffs would have no right of action at all against him.

I am not satisfied, even from the affidavit of the agent with whom the arrangement was made, that there was any agreement that, in case the check and draft should not be paid at maturity, the plaintiffs should be restored to their right to proceed against the defendant upon the original cause of action. All that the plaintiffs' agent says on the subject is, that the check and draft, *when paid, and not till then, were to be a satisfaction of the indebtedness; that the same were not proposed or accepted as a present satisfaction thereof, or with a view of changing, in any particular, the character of the plaintiffs' claim, or their security, or the defendant's responsibility.*

Assuming that this was so, I still think the transaction had the effect to "change the character of the plaintiffs' claim." It may not have been so intended. It probably was not. The agent may not have intended to relinquish any of the plaintiffs' rights or remedies. Perhaps he was not aware that the defendant was then liable to imprisonment for his defalcation. He says, the check and acceptance were not received in satisfaction of the defendant's indebtedness. This is undoubtedly true. The indebtedness was as large after the securities had been executed as it was before. He also says that he did not take these securities with a view to change the character of the claim, or the defendant's responsibility. I assume this to be so; and yet I think the taking of the check and acceptance had this effect : certainly they would have had this effect if, as negotiable securities, they had been transferred to any other person. And, if a third party, to whom they might have been transferred, could not imprison the defendant, I am unable to see how that remedy can be preserved to the plaintiffs.

Suppose the plaintiffs' claim had been for damages on account of some wrongful act, as, for example, an assault and battery : all will agree that the settlement of such a claim, by taking the note of the wrong-doer, would extinguish the original cause of action. Nor could it be revived, so that a suit could be main-

tained upon it, by any default in the payment of the note. So in this case, the plaintiffs' claim, which in its nature was for a wrong, and upon which the defendant might have been imprisoned, was, by the arrangement of the 8th of February, changed into a debt. The tortious character of the transaction was merged in the new contract between the parties. The settlement was unconditional, and the defendant ceased to be liable to imprisonment.

It is quite clear, I think, that, upon the whole case as it appears upon this motion, the order of arrest should not have been granted; and if not, then the order should be vacated.

The motion must, therefore, be granted, with costs